PATEL & ALMEIDA, P.C.
ALEX D. PATEL
(State Bar No. 201875)
alex@patelalmeida.com
PAULO A. DE ALMEIDA
(State Bar No.279168)
paulo@patelalmeida.com
16830 Ventura Blvd., Suite 360
Encino, CA 91436
Telephone: 818.380.1900
Fax: 818.380.1908

Attorneys for Plaintiff,
OLGA CURTIS

2014 MAR 11 AM 11:45
CLERK U. [illegible]
CENTRAL DIST [illegible]
LOS ANGELES [illegible]
BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA CURTIS, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>SHINSACHI PHARMACEUTICAL INC., *f/k/a* SHINSACHI MEDIA INC., a corporation of Canada; Seungwoo Shin, a Canadian individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:14-CV-00591-ODW(SSx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **DECLARATORY AND INJUNCTIVE RELIEF;**<br><br>2) **MISREPRESENTATION OF COPYRIGHT INFRINGEMENT UNDER THE DMCA (15. U.S.C. § 512(f));**<br><br>3) **CANCELLATION OF FEDERAL TRADEMARK REGISTRATION (15 U.S.C. § 1119)**<br><br>4) **FEDERAL CYBERPIRACY (15 U.S.C. § 1125(d));**<br><br>5) **TRADE LIBEL**<br><br>6) **INTENTIONAL INTERFERENCE WITH CONTRACT;**<br><br>7) **INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**BY FAX** |

1

**FIRST AMENDED COMPLAINT**

Plaintiff, Olga Curtis ("Plaintiff"), by and through her undersigned counsel, states as follows for her complaint against Defendant Shinsachi Pharmaceutical, Inc., f/k/a Shinsachi Media, Inc., a corporation of Canada ("Shinsachi"); Seungwoo Shin, a Canadian individual ("Shin"); and Does 1 through 10, inclusive (collectively, "Defendants"):

## NATURE OF THE ACTION

This is a declaratory judgment action seeking a determination that Plaintiff has never infringed any of the Defendants' copyrights, trademarks, or other intellectual property rights.  Plaintiff also seeks damages and an injunction prohibiting Defendants from sending false claims of infringement and other wrongdoing about Plaintiff to third party Internet service providers such as eBay and Google, among others, and from publishing false and disparaging statements about Plaintiff's skin care business on the Internet.  Further, Plaintiff herein seeks cancellation of  Defendant Shinsachi's U.S. Trademark Registration Nos. 4290428 ("TATTOONUMB"), 4321983 ("SUPERNUMB") and 4326072 ("DEEPNUMB"), all for topical anesthetic skin care products for tattoo pain relief, on the grounds that Plaintiff is the true owner of these trademarks based on her prior and superior common-law trademark rights, and alternatively on the grounds that Shinsachi has abandoned these trademarks through non-use in commerce.  Last, Plaintiff seeks an order by this Court transferring ownership of three domains to Plaintiff (*www.supernumb.com*, *www.deepnumb.com*, and *www.numbfast.com*) which the Defendants acquired and have used in bad faith to divert Plaintiff's consumers to Defendants' website, *www.drnumb.com*.

In short, Defendants used computers in Canada to hijack Plaintiff's trademarks TATTOONUMB, SUPERNUMB, and DEEPNUMB in the U.S. by registering them at the United States Patent and Trademark Office ("USPTO").  Defendants then used the registrations to prevent Plaintiff from selling her own

products online by sending over 30 Digital Millennium Copyright Act ("DMCA") "takedown" notices containing false allegations of copyright and trademark infringement to Plaintiff's third party service vendors such eBay, Google, PayPal, and her web hosting provider, Serversea.  On the basis of these false allegations of infringement, eBay removed over 140 of Plaintiff's on-line product listings for her skin care products and suspended her various user accounts; Google suspended Plaintiff's "Adwords" account used for on-line advertising; and SeaServer suspended Plaintiff's main website at *www.numbcreams.com*.  Defendants' false complaints also prevented Plaintiff from lawfully purchasing and re-selling some of the Defendants' "DR NUMB" skin cream products, which Plaintiff is entitled to do under the first sale doctrine.

In addition to the foregoing, Defendants recently began using the domains *www.supernumb.com*, *www.deepnumb.com*, and *www.numbfast.com*—all of which correspond to Plaintiff's trademarks SUPERNUMB, DEEPNUMB, and NUMBFAST®—to publish websites containing false and disparaging statements about Plaintiff's skin care products, including blatantly false statements that Plaintiff's products are subject to an "FDA recall" when so such "recall" occurred.

Over a period of three years, the foregoing acts of Defendants disrupted Plaintiff's business by preventing her from advertising and selling her skin care products on the Internet and discouraging consumers from purchasing her products. Still today, Defendants continue to send false infringement notices to third party Internet service providers and publish false/disparaging statements for the purpose of interfering with Plaintiff's business.  Plaintiff now seeks damages and injunctive relief prohibiting Defendants and their agents from continuing the inference.

## PARTIES

1.      Plaintiff is an individual with her principal place of business at 2006 S. Main St., Moscow, Idaho, United States.

**FIRST AMENDED COMPLAINT**

2.     On information and belief, Defendant Shinsachi is a corporation of Canada, having its principal place of business in Vancouver, British Columbia, Canada.

3.     On information and belief, Defendant Seungwoo Shin is an individual residing in Vancouver, British Columbia, Canada.

4.     Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 to 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

5.     Plaintiff is informed and believes, and on that basis alleges, that each of the defendants was the agent and/or employee of the remaining defendants and, at all times mentioned, acted within the course and scope of such agency and employment.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Copyright Act (17 U.S.C. §§ 101 *et seq*.), 28 U.S.C. §§ 1331, 1338, and the Declaratory Judgment Act (28 U.S.C. § 2201).  This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

7.     This Court has personal jurisdiction over Defendants because they conduct business in the State of California through, among other things, operating interactive websites purposefully directed at California residents, selling skin creams to California residents, and using the internet to send electronic communications containing false statements to Plaintiff's third party service vendors in California, including eBay, Google, and PayPal.

8.     Venue is proper in the Central District of California pursuant to 28

4

U.S.C. § 1391(c) because Defendants are not residents in the United States and may be sued in any judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiff's Successful Skin Care Brands

9.      Since at least as early as 2011, Plaintiff  has invested substantial resources into marketing and selling topical anesthetic skin creams throughout the U.S. under the trademarks TATTOONUMB, SUPERNUMB, and DEEPNUMB, and NUMBFAST® (collectively, the "NUMB Marks").

10.     Specifically, Plaintiff has used the trademark TATTOONUMB for topical anesthetics since June 25, 2011, the trademark SUPERNUMB for topical anesthetics since June 12, 2011, the trademark DEEPNUMB for topical anesthetics since June 16, 2011, and the trademark NUMBFAST for topical anesthetics since August 11, 2011.

11.     Plaintiff's NUMB Marks have developed national and international brand recognition as identifying some of the highest quality topical anesthetics available on the market today.

12.     The USPTO registered NUMBFAST® to Plaintiff on February 15, 2014 (Registration No. 4477311).

13.     Plaintiff has extensive common law rights in all of the NUMB Marks based her continuous use of the marks throughout the United States since the aforementioned "first use" dates.

14.     As a result of Plaintiff's widespread and continuous use of the NUMB Marks, the marks have acquired extensive, valuable goodwill, have developed a high degree of distinctiveness, and have become well known and recognized as identifying Plaintiff's superior quality skin care creams.

15.     Plaintiff primarily advertises and sells her topical anesthetics under the NUMB Marks on the Internet through her "listings" at the online retail and auction

**FIRST AMENDED COMPLAINT**

website eBay.com ("eBay").

16.     In addition to her seller pages on eBay, Plaintiff also operates the website at *www.numbcreams.com* to promote and sell her skin creams under the NUMB Marks.

17.     Through her sales on eBay and elsewhere on the Internet, Plaintiff has built up substantial good will as a reputable and dependable seller of topical anesthetic skin creams.

## Plaintiff's Lawful Sales of Defendants' DR. NUMB Products

18.     On information and belief, Defendants produce a topical anesthetic cream under the trademark DR. NUMB ("DR. NUMB") and sells the product through their own website at www.*drnumb.com* and through eBay.

19.     On information and belief, Defendant Seungwoo Shin, a director of Defendant Shinsachi, registered the trademark DR. NUMB with the USPTO.  The U.S. trademark registration number for DR. NUMB is 3916453.  On information and belief, although there is no assignment for the DR. NUMB registration recorded at the USPTO, Shinsachi uses the mark with the permission of its director, Defendant Seungwoo Shin.

20.     Defendant Shinsachi is a competitor of Plaintiff in the field of topical anesthetics.

21.     On a few occasions, Plaintiff purchased DR. NUMB products directly from Defendants through the Internet and lawfully re-sold them in the United States on eBay and on her website at *www.numbcreams.com*.  Plaintiff sold the DR. NUMB products along with her own products TATTOONUMB, SUPERNUMB, and DEEPNUMB.

22.     No contract existed between Defendants and Plaintiff concerning Plaintiff's re-sale of DR. NUMB products in the United States.

**FIRST AMENDED COMPLAINT**

23.     On information and belief, when Defendants first sold the DR. NUMB products to Plaintiff which she later offered for re-sale on the Internet, Defendants did not retain ownership of those particular products.  On information and belief, Plaintiff owned the DR. NUMB products once purchased from Defendants and lawfully re-sold them pursuant to the *first sale doctrine*.

## **Defendants' Wrongful Conduct**

### Shinsachi's Unlawful Registration of Plaintiff's Marks in the United States

24.     On information and belief, approximately one year after Plaintiff began selling her products under the NUMB Marks on eBay in June of 2011, Defendant Shin filed three trademark applications at the USPTO for the marks TATTOONUMB, SUPERNUMB, and DEEPNUMB, all for use in connection with "topical anesthetics".

25.     Specifically, on February 16, 2012, Defendant Shinsachi filed the following U.S. trademark applications at the USPTO:

      1) Serial Number 85/545,084 for the mark TATTOONUMB for "topical anesthetics" alleging a "first use" date of August 11, 2011, and a "first use in commerce" date of February 3, 2012;

      2) Serial Number 85/545,073 for the mark SUPERNUMB for "topical anesthetics" alleging a "first use" date of August 11, 2011, and a "first use in commerce" date of February 5, 2012; and

      3) Serial Number 85/545,054 for the mark DEEPNUMB for "topical anesthetics" alleging a "first use" date of August 11, 2011, and a "first use in commerce" date of February 12, 2012.

**FIRST AMENDED COMPLAINT**

26.     On February 12, 2013, the USPTO issued U.S. trademark registration number 4290428 for the mark TATTOONUMB on the Supplemental Register.

27.     On April 16, 2012, the USPTO issued U.S. trademark registration number 4321983 for the mark SUPERNUMB on the Principal Register.

28.     On April 23, 2013, the USPTO issued U.S. trademark registration number 4326072 for the mark DEEPNUMB on the Supplemental Register.

29.     On information and belief, Defendants knew that Plaintiff was the prior user of the NUMB Marks in the United States when Defendant Shinsachi filed the three trademark applications on February 16, 2012.

30.     As the prior user of the NUMB Marks, Plaintiff is the owner of the marks and is entitled to federal registration, not Shinsachi.

31.     On information and belief, the Defendants have never used the marks TATTOONUMB, SUPERNUMB or DEEPNUMB to sell any goods of any kind in the United States.  As such, Defendants never acquired any trademark rights in these marks.  If Defendants ever acquired trademark rights in these marks, Defendants abandoned such rights through non-use in commerce.  For these additional reasons, Defendants were never entitled to federal registration of the marks, and are not entitled to maintain such registrations for marks which are not in use.

32.     On information and belief, the Defendants filed the foregoing trademark applications for the purpose of preventing Plaintiff from registering her own NUMB Marks in the United States, and so that Defendants could misuse the resulting registrations to disrupt Plaintiff's business.  Specifically, Defendants sent communications containing false allegations of trademark infringement to Plaintiff's third party Internet service providers, which Defendants knew were false and would result in the removal of Plaintiff's products and advertising from the

**FIRST AMENDED COMPLAINT**

1  Internet.  These false complaints resulted in the removal of Plaintiff's products and
2  advertising, causing damage to Plaintiff's business.

3  <u>Defendants' False Allegations of Infringement and Other Wrongdoing Sent to</u>
4  <u>Plaintiff's Third Party Internet Service Providers</u>

5       33.     On various dates between 2011 and 2013, Defendants, directly or
6  through an agent, submitted over 200 complaints to various third party Internet
7  service providers, including eBay, Google, PayPal, and Plaintiff's web hosting
8  provider, Serversea, alleging that Plaintiff had infringed on Defendants' copyrights
9  and/or trademarks, and/or that Plaintiff had engaged in other unlawful activities.

10       34.     Some of the complaints alleged infringement of the TATTOONUMB,
11  SUPERNUMB, and DEEPNUMB trademark registrations, despite Plaintiff's
12  superior rights in these marks.  Some complaints alleged infringement of
13  Defendants' DR. NUMB trademark, even though Plaintiff lawfully purchased and
14  re-sold the DR. NUMB products under the first sale doctrine.  Other complaints
15  alleged copyright infringement of images and/or text owned by Defendants, without
16  specifying any copyright registration, and without identifying the images or text
17  allegedly used by Plaintiff.  Other complaints alleged that Plaintiff had engaged in
18  "spamming" or that Plaintiff had sold topical anesthetics in violation of government
19  regulations concerning such products.

20       35.     The allegations of infringement and other wrongdoing in the
21  complaints are false, and Defendants knew or should have known upon submitting
22  the complaints that the statements contained therein were false.  These complaints
23  demanded that the Internet service providers remove Plaintiff's products and
24  advertising from the Internet.  In most cases, these Internet service providers
25  removed Plaintiff's products from the internet, thereby causing lost sales and
26  damage to Plaintiff's business.

27

28

36.   Specifically, on information and belief, on various dates between 2011 and 2013, Defendants, directly or through an agent, submitted over 30 "Notices of Claimed Infringement" ("Notices") to eBay through eBay's Verified Rights Owner ("VeRO") program, which allows intellectual property holders to terminate on-line listings of allegedly infringing goods.  On information and belief, the Notices submitted by Defendants alleged trademark and/or copyright infringement and demanded that eBay terminate Plaintiff's eBay listings of products for sale.

37.   On information and belief, in these Notices, Defendants represented under penalty of perjury that they had a good faith belief that Plaintiff's listings infringed Defendants' trademarks and/or copyrights, and that all of the information contained in the Notices was accurate.  Submission of a Notice through the VeRO program constitutes a notification of infringement under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

38.   On information and belief, upon submitting the Notices, Defendants did not have a good faith belief that the products offered for sale in Plaintiff's listings infringed Defendants' copyrights and/or trademarks.  All of the Notices contained false statements and misrepresentations concerning infringement.  At the very least, on information and belief, upon submitting the Notices, Defendants knew or should have known the Notices contained false statements and misrepresentations concerning infringement.

39.   The products offered for sale complained of in the Notices were either Plaintiff's own products sold under her NUMB Marks, or they were DR. NUMB products which Plaintiff lawfully purchased from Defendants and re-sold in the United States pursuant to the first sale doctrine.

40.   Plaintiff's eBay listings complained of in the Notices did not include any of Defendants' copyrighted text or graphics.

**FIRST AMENDED COMPLAINT**

41.     Plaintiff s eBay listings complained of in the Notices did not infringe Defendants' copyrights, trademarks, or any other rights of Defendants.

42.     Each time Defendants submitted a Notice through the VeRO program, eBay notified Plaintiff of the alleged infringement and removed the listing complained of in the Notice.  In each Notice, eBay identified one of the Defendants as the intellectual property rights owner responsible for the Notice.

43.     Plaintiff contacted Defendants by email and inquired into the reason for the termination of the eBay listings.  Defendants responded in an email stating that "the selling of SuperNumb and DeepNumb must stop immediately"; that "[Plaintiff] is selling unauthorized pharmaceutical drugs" and that "Unauthorized use of [Defendants'] Dr. Numb copyrighted material by 'SuperNumb and DeepNumb' is absolutely illegal."  Defendants also stated, "We believe you have wilfully infringed our rights under 17 USC Section 101 and you will be liable for statutory damages as high as $100,000.00."

44.     In addition to contacting the Defendants by email, Plaintiff sent various Counter Notices regarding the removed listings ("Counter-Notices") to eBay, in compliance with the VeRO program policies and with the DMCA, 17 U.S.C. § 512(g)(3).  The Counter-Notices explained that Plaintiff did not engage in any infringement of Defendants' intellectual property rights.

45.     On information and belief, eBay informed Defendants of Plaintiff's Counter-Notices, explaining that eBay would allow Plaintiff's listings to be restored if eBay did not receive notice within a certain amount of time that Defendants had filed an action in federal court seeking an order to restrain Plaintiff from selling her products.  Defendants did not file such an action, and therefore, eBay allowed some of the listings to be restored on the eBay site.

46.     Even after some of Plaintiff's listings were restored by eBay, and even after Plaintiff informed Defendants that there was no infringement, Defendants

11

1    continued to submit Notices containing false statements concerning infringement,

2    resulting in the continued removal of Plaintiff's listings from eBay.

3         47.   At least 140 of Plaintiff's eBay listings were removed by the

4    aforementioned actions of Defendants between 2011 and 2013.

5         48.   But for Defendants misrepresentations concerning alleged

6    infringement in the Notices, eBay would not have removed the listings.

7         49.   As a result of Defendants' actions, Plaintiff has expended time and

8    resources, has lost sales, and is unable to continue to sell her products on eBay.

9    Plaintiff has also suffered damage to her reputation as a top-rated seller on eBay.

10   For example, and among other damages, the termination of Plaintiff's product

11   listings damaged Plaintiff by causing eBay to issue "strikes" against Plaintiff's seller

12   account, which caused eBay to place Plaintiff's product listings at the back of the

13   search query list for Plaintiff's products, thereby making Plaintiff's products more

14   difficult to find and resulting in damage to her reputation as a popular and trusted

15   seller of skin care products.  As a result of the terminated listings, Plaintiff

16   expended time and resources to improve her online visibility and reputation and

17   return her listings to the top of the search results.

18        50.   On information and belief, in November of 2012, Defendants or their

19   agent sent a complaint to Google's "Adwords" team containing allegations of sales

20   of "counterfeit goods" by Plaintiff.  Plaintiff never sold any "counterfeit goods" or

21   otherwise violated Google's "Advertising Policy".  Thus, the allegations of

22   counterfeiting are false, and, on information and belief, Defendants knew they were

23   false.  Based on the complaint, Google notified Plaintiff that it would no longer

24   display her advertisements because she had violated the company's "Advertising

25   Policy".  As a result of Defendants' false allegations, Plaintiff is still today unable to

26   advertise using Google Adwords, which has resulted in lost sales and damage to

27   Plaintiff's business.

28

**FIRST AMENDED COMPLAINT**

51.     On information and belief, in 2013, Defendants or their agent sent at least one complaint to Plaintiff's web hosting provider, Serversea, which hosts Plaintiff's website at *www.numbcreams.com*.  The complaint(s) alleged that Plaintiff had engaged in copyright and trademark infringement, and that Plaintiff had also engaged in "spamming".  On information and belief, upon receiving the first complaint, a representative from ServerSea stated in an email to Plaintiff, "Your website is down due to TRADEMARK INFRINGEMENT and [sic]continues spamming. You are violating our terms of services and US law. We cannot restore your website until you contact our support team and provide them legal prove that you own the company that you claim and you'll never send spam again."

52.     Upon receiving a second complaint, a representative from Seversea stated in an email to Plaintiff, "This is the second time we have [sic]receied abuse warning from internet authorities and now we will not let your account open with out[sic] your proper explanation on this." *Id*.  Defendants' allegations in the complaint(s) to Serversea are false.  Plaintiff never infringed any of Defendants' copyrights or trademarks, and Plaintiff never engaged in any "spamming". Eventually, Serversea restored Plaintiff's website; however, as a result of Defendants' false complaints, Plaintiff was forced to expend time and resources to seek restoration of the page through Serversea, and the page was inoperative for some time, which caused lost sales and other damages to Plaintiff.

53.     Defendants continue to send communications containing false allegations of infringement to Plaintiff's third party Internet service providers, and Defendants' continued wrongdoing has caused, is causing, and will continue to cause irreparable harm to Plaintiff and her business.

Defendants' False and Disparaging Statements Published on the Internet

54.     In addition to making false statements about Plaintiff directly to her service providers, on information and belief, Defendants published false and

13

**FIRST AMENDED COMPLAINT**

disparaging statements about Plaintiff's NUMBFAST®, SUPERNUMB, and DEEPNUMB products on the websites located at *www.numbfast.com*, *www.supernumb.com*, and *www.deepnumb.com*. These false and disparaging statements are widely published on the Internet and can easily be seen by Plaintiff's consumers.

55. Specifically, the website at *www.numbfast.com* states that "Numbfast is no longer available" and "Numbfast is now discontinued!". These statements are false because the product is not "discontinued" and Plaintiff continues to sell her federally-registered NUMBFAST® products across the United States.

56. The website at *www.supernumb.com* states that "SuperNumb is under an FDA recall order dated February 2, 2012 to stop the production and distribution of SuperNumb numbing cream"; that "SuperNumb, its directors and officers, are taking all steps to comply with the injunction"; and that "[Defendants] have very recently become aware of unauthorized resellers/advertisers on the internet purporting to use the SuperNumb name." These statements are completely false because no such "FDA recall" was ordered, and there was no such "injunction" issued by any court or U.S. government agency. Further, Plaintiff's sale of SUPERNUMB products is not "unauthorized", as Plaintiff is the owner of the SUPERNUMB trademark.

57. The website at *www.supernumb.com* states that "DeepNumb is under an FDA recall order dated February 18, 2012 to stop the production and distribution of DeepNumb numbing cream"; that "DeepNumb, its directors and officers, are taking all steps to comply with the injunction"; and that "[Defendants] have very recently become aware of unauthorized resellers/advertisers on the internet purporting to use the DeepNumb name." These statements are completely false because no such "FDA recall" was ordered, and there was no such "injunction" issued by any court or U.S. government agency. Further, Plaintiff's sale of

**FIRST AMENDED COMPLAINT**

DEEPNUMB products is not "unauthorized", as Plaintiff is the owner of the DEEPNUMB trademark.

58.   Defendants made these statements intentionally, with knowledge and/or with reckless disregard as to the truth or falsity of the statements. Defendants' false and disparaging statements have resulted in injury to Plaintiff's business and reputation.

<u>Defendants' Unlawful Registration of Domains Containing Plaintiff's Trademarks</u>

59.   On information and belief, Defendants have acquired and used the domain names *www.numbfast.com*, *www.supernumb.com*, and *www.deepnumb.com*, which are nearly identical to or confusingly similar to Plaintiff's federally-registered NUMBFAST® Mark and her common-law trademarks SUPERNUMB and DEEPNUMB.  Defendants acquired and used the domains in bad faith to publish false and disparaging statements about Plaintiff's products and redirect Plaintiff's consumers to Defendant's website at *www.drnumb.com*.  The Defendants' use of the domains to disparage Plaintiff's products and re-direct consumers has damaged Plaintiff's business and reputation.

60.   Due to Defendants' continuing unlawful conduct, Plaintiff is now forced to bring this Complaint to protect her business and her valuable intellectual property rights.  In filing this Complaint, Plaintiff was required to retain counsel and incur substantial fees and costs, and continues to incur fees and costs, to prosecute this lawsuit and pursue her claims.

## <u>COUNT I – DECLARATORY RELIEF</u>

(Against all Defendants)

61.   Plaintiff hereby incorporates by reference paragraphs 1 through 60, *supra,* as if fully set forth herein.

**FIRST AMENDED COMPLAINT**

62.     Defendants contend that Plaintiff has infringed their alleged copyrights, trademarks, and that Plaintiff has engaged in spamming and the sale of illegal products.

63.     Plaintiff contends that she has never infringed any of Defendants' alleged copyrights or trademarks, and in particular, her purchase and resale of DR. NUMB products in the U.S. is lawful under the first sale doctrine.

64.     Defendants have threatened to take legal action against Plaintiff if she continues to sell her product, and Defendants have repeatedly requested removal of Plaintiff's eBay listings, her website, or otherwise complained to Plaintiff's third party Internet service providers about the alleged infringement.

65.     Plaintiff continues to attempt to sell her products on the internet under threat of legal action by Defendants, and Defendants have already caused the removal of Plaintiff's eBay listings and caused Google to disallow Plaintiff from using the AdWords advertising program.

66.     On information and belief, Defendants plan to continue to interfere with Plaintiff's business in the aforementioned manner for the indefinite future.

67.     As a result of Defendants' actions, eBay suspended Plaintiff's seller accounts and has informed her that it will not reinstate them until eBay receives authorization from Defendants.  Google has disallowed Plaintiff from using the AdWords program.  Defendants have refused to authorize eBay to reinstate Plaintiff's accounts, and eBay will not do so without an order from this Court declaring that there is no infringement.

68.     Plaintiff seeks to sell and advertise her products on eBay and elsewhere on the Internet, but as a result of Defendants' actions, is unable to do so. As a result, Plaintiff continues to lose profits and suffer damage to her business and reputation.

**FIRST AMENDED COMPLAINT**

69.     There is a real and actual controversy between Plaintiff and Defendants regarding whether the continued sale of her products is lawful or whether it infringes Defendants' rights, and whether Plaintiff has engaged in "spamming" or selling illegal products -- none of which Plaintiff has done.

## COUNT II – MISREPRESENTATION OF COPYRIGHT INFRINGEMENT

(Against all Defendants)

70.     Plaintiff hereby incorporates by reference paragraphs 1 through 69, *supra,* as if fully set forth herein.

71.     By submitting Notices of Claimed Infringement to eBay and other complaints to other Internet service providers, Defendants knowingly and materially misrepresented that Plaintiff's sale of skin care products infringed Defendants' alleged copyrights.

72.     As a result of Defendants' acts alleged herein, Plaintiff has suffered, is suffering, and will continue to suffer substantial damage to her business in the form of lost profits and injury to goodwill and reputation.

73.     As a result of Defendants' knowing material misrepresentations, Plaintiff is entitled pursuant to 17 U.S.C. § 512(f) to all damages, including costs and attorneys' fees, which she incurred as the result of eBay's reliance upon Defendants' misrepresentations.

74.     Unless this Court restrains Defendants from further commission of the aforementioned acts, Plaintiff will suffer irreparable injury, for which she is without an adequate remedy at law.  Accordingly, Plaintiff seeks an order enjoining Defendants from any sending any further wrongful notices, complaints, or threats in connection with the sale of Plaintiff's products on the internet.

**FIRST AMENDED COMPLAINT**

## COUNT III – CANCELLATION OF FEDERAL TRADEMARK REGISTRATION (15 U.S.C. §§ 1064 AND 1119)

(Against Defendant Shinsachi)

75. Count III is an action for cancellation of a federal trademark registration under arising under Section 14 of the Lanham Act, 15 U.S.C. §§ 1064 and 1119. Subject matter jurisdiction over this Count is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

76. Plaintiff hereby incorporates by reference paragraphs 1 through 75, *supra,* as if fully set forth herein.

77. Defendant Shinsachi applied for and obtained U.S. trademark registrations for the marks TATTOONUMB (Reg. No. 4290428), SUPERNUMB (Reg. No. 4321983), and DEEPNUMB (Reg. No. 4326072), described in this Complaint, *supra.*

78. Plaintiff has been and will continue to be damaged by Reg. Nos. 4290428, 4321983, and 4326072 and hereby prays for cancellation of the same. As grounds in support of her claim for cancellation, Plaintiff alleges as follows:

<u>Priority and Likelihood of Confusion</u>

79. Plaintiff has extensively used and promoted the marks TATTOONUMB, SUPERNUMB, and DEEPNUMB for topical anesthetics in interstate commerce, and thus owns valuable common-law trademark rights in the marks, with priority of use established as early as June 25, 2011, for TATTOONUMB; June 12, 2011, for SUPERNUMB; and June 16, 2011, for DEEPNUMB.

80. Shinsachi's application filing date of February 26, 2012 for the TATTOONUMB, SUPERNUMB, and DEEPNUMB trademark applications falls at least one (1) year and three (3) months after Plaintiff's first use of the same marks in June of 2011.

18

**FIRST AMENDED COMPLAINT**

81.     On information and belief, Shinsachi's claimed "first use" of the TATTOONUMB, SUPERNUMB, and DEEPNUMB marks on August 11, 2011, falls at least one (1) month after Plaintiff's first use of the same marks for topical anesthetics in June of 2011.

82.     On information and belief, Shinsachi does not have any basis for claiming rights in the TATTOONUMB, SUPERNUMB, or DEEPNUMB marks prior to Shinsachi's application filing dates or claimed "first use" dates for the same marks.

83.     On information and belief, Shinsachi does not have any basis for claiming rights in the TATTOONUMB, SUPERNUMB, or DEEPNUMB marks prior to Plaintiff's aforementioned first use dates for the same marks.

84.     On information and belief, Plaintiff's first use of her NUMB Marks predates the earliest date on which Shinsachi may rely for its alleged use of the TATTOONUMB, SUPERNUMB, and DEEPNUMB marks for topical anesthetics.

85.     Plaintiff has priority of use of her NUMB marks based on her earlier use in commerce.

86.     Shinsachi's junior marks are identical to Plaintiff's senior NUMB Marks and are likely, when applied to Shinsachi's goods, to cause confusion, mistake or deception among consumers within the meaning of 15 U.S.C. § 1052(d).

87.     Shinsachi's topical anesthetics are identical to and are advertised and directed at the same marketing and trade channels, and to the same consumers, as Plaintiff's topical anesthetics.

88.     Shinsachi's junior marks so resemble Plaintiff's senior NUMB Marks, and the goods are so similar such that the public is likely to Shinsachi's junior marks as denoting an affiliation, connection, or association of Shinsachi with Plaintiff and as to the origin, sponsorship, and approval of Shinsachi's goods by Plaintiff, when that is not the case, thereby damaging Plaintiff.

FIRST AMENDED COMPLAINT

89.     On information and belief, Shinsachi knew or should have known of Plaintiff's prior adoption and use of its NUMB Marks, and therefore could not have formed the requisite good faith belief that Shinsachi is the owner of the marks sought to be registered, and that no other person, firm, corporation or association has the right to use said mark in commerce, and consequently knew that such use is and would be in derogation and violation of Plaintiff's rights.

Abandonment

90.     On information and belief, pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1127, Shinsachi has abandoned the marks TATTOONUMB, SUPERNUMB, and DEEPNUMB due to nonuse for at least two consecutive years and has no intent to resume use of the marks as registered and/or Shinsachi has never used the marks as registered and has no intent to commence use of the marks.

91.     Plaintiff attempted to find Shinsachi's TATTOONUMB, SUPERNUMB, and DEEPNUMB topical anesthetics as shown in the aforementioned U.S. trademark registrations by extensively searching the Internet and various retail and on-line retail stores, but was unable to find Shinsachi's goods offered anywhere in the United States.

92.     On information and belief, Shinsachi does not currently produce or sell any goods under the marks TATTOONUMB, SUPERNUMB, or DEEPNUMB anywhere in the United States, and has not provided such goods anywhere in the United States for at least two years with no intent to resume use of the mark for such goods, and/or has never used the TATTOONUMB, SUPERNUMB, or DEEPNUMB marks and has no intent to commence use of the marks for such goods.

93.     Plaintiff will be damaged by the continued registration of TATTOONUMB, SUPERNUMB, or DEEPNUMB in that such registrations will give colorable exclusive statutory rights to Shinsachi in violation and derogation of

**FIRST AMENDED COMPLAINT**

the common law trademark rights of Plaintiff in her own NUMB Marks for topical anesthetics.  In addition, Plaintiff has been damaged in that Defendants wrongfully used the registrations to interfere with and damage Plaintiff's business by sending false allegations of infringement of the registered marks to Plaintiff's third party Internet service providers.

## COUNT IV – FEDERAL CYBERPIRACY

### (Against all Defendants)

94.    Count IV is an action for federal cyberpiracy arising under 15 U.S.C. § 1125(d).  Subject matter jurisdiction over this Count is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(b).

95.    Plaintiff hereby incorporates by reference paragraphs 1 through 94, *supra,* as if fully set forth herein.

96.    On information and belief, Defendants have acquired and used the domain names *www.numbfast.com*, *www.supernumb.com*, and *www.deepnumb.com*, which are nearly identical to or confusingly similar to Plaintiff's federally-registered NUMBFAST® Mark and her common-law trademarks SUPERNUMB and DEEPNUMB.

97.    According to the domain name lookup service, *www.whois.com*, the domain names *www.supernumb.com* and *www.deepnumb.com* are registered to Defendant "ShinSachi Pharmaceutical Inc."  The domain *www.numbfast.com* is registered to "Domains By Proxy, LLC", which is a so-called "privacy service".  On information and belief, Defendants are the true owners and users of *www.numbfast.com*, not Domains By Proxy, LLC.  For example, the website contains advertisements for Defendants' Dr. Numb products and website, which shows that Defendants own or at least control the use of the *www.numbfast.com* domain.

**FIRST AMENDED COMPLAINT**

98.     On information and belief, "Domains By Proxy, LLC" is a false and fictitious name which the Defendants listed as the registrant for the purpose of anonymously acquiring and using the domain with the bad faith intent to profit from the Plaintiff's mark NUMBFAST®.  On information and belief, Defendants registered the domain using this false registrant information under the mistaken belief that, by using such false information, Defendants would not be discovered or held responsible for the unlawful use of the domain to unfairly trade on the goodwill of Plaintiff's mark by redirecting Plaintiff's customers to Defendants' website *www.drnumb.com*.

99.     On information and belief, Defendants acquired and used, and continue to use the infringing domains *www.supernumb.com*, *www.deepnumb.com,* and *www.numbfast.com* with the bad faith intent to profit from Plaintiff's NUMB Marks.  This bad faith intent is manifest from Defendants' numerous false and disparaging statements about Plaintiff's NUMB Marks appearing on the websites, coupled with advertisements of Defendants' own products and links to its own website *www.drnumb.com*—all designed to confuse, divert, and re-direct Plaintiff's consumers to Defendants' website.  It is also manifest from the facts that, *inter alia*, (i) Defendants have no valid trademark or other intellectual property rights in SUPERNUMB, DEEPNUMB, and NUMBFAST®; (ii) the domain names are nearly identical to the Plaintiff's NUMB Marks; (iii) on information and belief, Defendants had actual or at least constructive knowledge of Plaintiff and her NUMB Marks prior to acquiring the domains; and (iv) Defendants provided the false and fictitious registrant name "Domains By Proxy, LLC" for *www.numbfast.com* in an attempt to conceal their identities under the mistaken belief that they would not be responsible for unlawful use of the domain if they provided such false registrant information.

**FIRST AMENDED COMPLAINT**

100.   In view of the foregoing, Plaintiff is entitled to remedies including, at least: (i) an order pursuant to 15 U.S.C. § 1125(d)(1)(C) that Defendants must forfeit the domain names by transfer of the same to Plaintiff; (ii) an award to Plaintiff of profits, damages and costs pursuant to 15 U.S.C. § 1117(a); or (iii) an award to Plaintiff of statutory damages pursuant to 15 U.S.C. § 1117(d).

## COUNT V – TRADE LIBEL

(Against all Defendants)

101.   Plaintiff hereby incorporates by reference paragraphs 1 through 100, *supra,* as if fully set forth herein.

102.   Defendants' false statements as set forth above regarding an "FDA recall", "injunction", and discontinuation of Plaintiff's products ("Defendants' False Statements") were widely published and not privileged in any manner.

103.   Defendants' False Statements were reasonably understood to concern Plaintiff's products and were disparaging and false.

104.   Because of the fact and circumstances known to the readers of Defendants' False Statements, the statements injured Plaintiff's business and discouraged others from associating or dealing with her.

105.   The Defendants made the foregoing statements with knowledge of their falsity and with the intent to damage Plaintiff's business, and/or Defendants failed to use reasonable care to determine the truth or falsity of the statements.

106.   Plaintiff suffered harm to her business, profession and occupation including lost sales, lost profits, and money spent because of Defendants' False Statements.

107.   Defendants' False Statements have falsely tainted and damaged Plaintiffs' business and her NUMB Marks in the eyes of consumers.  In addition, Plaintiff's products will be less likely to be purchased by consumers as a result of the Statements.

**FIRST AMENDED COMPLAINT**

108.   Defendants' False Statements caused pecuniary harm to Plaintiff's business.

**COUNT VI – INTENTIONAL INTERFERENCE WITH CONTRACT**

(Against all Defendants)

109.   Plaintiff hereby incorporates by reference paragraphs 1 through 108, *supra,* as if fully set forth herein.

110.   Plaintiff had a valid contract with eBay to sell products through the eBay website.  Plaintiff also had valid contracts directly with eBay users who had agreed to purchase Plaintiff's products.

111.   Plaintiff had valid contracts with other Internet service providers such as Google, Serversea, and Paypal.

112.   Defendants knew about Plaintiff's contracts with eBay, eBay users, Google, Serversea, and Paypal.

113.   Defendants intentionally submitted false Notices of Claimed Infringement to eBay and sent other complaints containing false allegations of infringement to Google, Serversea, and Paypal to disrupt Plaintiffs contracts.  In the alternative, Defendant  negligently submitted the false Notices of Claimed Infringement and other complaints.

114.   Defendants' conduct caused eBay and Google to terminate their contracts with Plaintiff by suspending her accounts.

115.   Defendants' conduct also caused eBay users who had agreed to buy her products to terminate their contracts with Plaintiff.

116.   By reason of the foregoing, Plaintiff has been damaged in that Defendant's conduct has resulted in lost profits and other damages to Plaintiff, and Plaintiff will continue to be damaged unless Defendants are enjoined from continuing their wrongful conduct.

117.   Plaintiff will be irreparably injured by the continued acts of Defendants, until and unless such acts are enjoined.  Plaintiff has no adequate remedy at law.

## COUNT VII – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Against all Defendants)

118.   Plaintiff hereby incorporates by reference paragraphs 1 through 117, *supra,* as if fully set forth herein.

119.   Plaintiff had economic relationships with eBay, Google, Serversea, and Paypal, with the probability of future economic benefit to plaintiff.

120.   Plaintiff also had economic relationships with potential purchasers of her products on eBay.

121.   Defendants knew about Plaintiff's economic relationships with Google, Serversea, eBay, and potential purchasers of her products on eBay.

122.   Defendants intentionally submitted false Notices of Claimed Infringement and sent other complaints containing false allegations of infringement to eBay, Google, Serversea, and Paypal to disrupt Plaintiff's future economic benefit by causing lost sales and other damages.  In the alternative, Defendants negligently sent the false Notices of Claimed Infringement and other complaints containing false allegations of infringement.

123.   Defendants' conduct was independently wrongful in that it constituted misrepresentation and improper business practices.

124.   Defendants' conduct caused Plaintiff to lose future economic benefits by causing lost sales and other damages to Plaintiff, and will continue to be damaged unless Defendants are enjoined from continuing their wrongful conduct.

**FIRST AMENDED COMPLAINT**

125.   Plaintiff will be irreparably injured by the continued acts of Defendants, until and unless such acts are enjoined.  Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.      A declaratory judgment that Plaintiff's sale of TATTOONUMB, SUPERNUMB, DEEPNUMB, DEEPNUMB® and DR NUMB skin care products is lawful and does not infringe Defendants' copyright, trademark, or other rights; and, in particular, that Plaintiff's sale of DR NUMB products is protected by the first sale doctrine;

B.      That Defendants and their parents, subsidiaries and affiliated companies, their respective officers, directors, agents, servants, employees, representatives and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction order by personal or other service be preliminarily and permanently enjoined from (1) sending Notices of Claimed Infringement to eBay concerning Plaintiff; (2) sending any other complaints containing allegations of infringement or other wrongdoing to Plaintiff's third party Internet service providers or other vendors of goods and/or services; (3) interfering in any way with Plaintiff's sale of skin care products on the Internet; (4) engaging in unfair competition by making false or misleading statements about Plaintiff's products, including but not limited to the NUMB Marks.

C.      An injunction requiring Defendants to (1) rescind their Notices of Claimed Infringement with eBay and to authorize eBay to reinstate Plaintiff's accounts; and (2) retract their allegations of infringement and/or other wrongdoing sent to Google, Paypal, Serversea, and any other third party Internet service providers who received such complaints; and (3) retract any and all false or misleading statements published about Plaintiff and/or her products on the Internet;

1       D.     That Defendants be ordered to cease using the domains

2   *www.numbfast.com, www.supernumb.com*, and *www.deepnumb.com*, and be

3   ordered to transfer these domains to Plaintiff pursuant to 15 U.S.C. §

4   1125(d)(1)(C);

5       E.     That Defendants be ordered to cease using any other domain names,

6   websites, or web pages that include references to the NUMB Marks, or any other

7   trade name or trademark confusingly similar to the NUMB Marks, and be ordered

8   to transfer the same to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C);

9       F.     Damages according to proof;

10       G.     That because of the willful nature of Defendants' acts, the Court enter a

11   judgment for treble the amount of the aforesaid damages;

12       H.     That because of the willful, intentional, and wrongful nature of

13   Defendants' acts, the Court award to Plaintiff exemplary or punitive damages;

14       I.     That the Court award Plaintiff pre-judgment interest;

15       J.     That Defendant be required to pay to Plaintiff its costs in this action,

16   including all costs and attorneys' fees; and

17       K.     That Plaintiff be granted such other and further relief as the Court

18   deems just and proper.

19

20   Dated:  March 10, 2014          PATEL & ALMEIDA, P.C.
                   ALEX D. PATEL
21                      PAULO A. DE ALMEIDA

22                      By: /Alex D. Patel/
23                        ALEX D. PATEL

24                      Attorneys for Plaintiff,
25                      OLGA CURTIS

26

27

28

27

**FIRST AMENDED COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated:  March 10, 2014                          PATEL & ALMEIDA, P.C.
                                                ALEX D. PATEL
                                                PAULO A. DE ALMEIDA

                                                By:   /Alex D. Patel/_____
                                                      ALEX D. PATEL

                                                Attorneys for Plaintiff,
                                                OLGA CURTIS

28